UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **GREAT LAKES TOWER, LLC**, <br><br> Plaintiff, <br><br> vs. <br><br> **CAMERON WIRE & CABLE, INC.**, <br><br> Defendant. | 2:20-CV-11014-TGB <br><br><br> **ORDER DENYING DEFENDANT'S MOTION TO TRANSFER** |

A forum selection clause in a contract allows parties to agree that any dispute relating to that contract will be resolved in a specific court. In this suit, the parties' contract for a sale of goods required that all disputes would be litigated in the state of Michigan. The question before this Court is whether Plaintiff may enforce the forum selection clause and defeat Defendant's motion to transfer to a federal court in Arkansas? Because the Court concludes that the forum selection clause applies, Defendant's motion to transfer will be **DENIED**.

1

## I.   Background

Plaintiff, a designer and constructor of towers used to support wind turbines, is a limited liability company with its principal place of business in Monroe County, Michigan. ECF No. 1-2, PageID.12. Defendant, a distributor of specialty wire and cable products, is an Arkansas corporation with its principal place of business in Little Rock, Arkansas. *Id*.

In August 2018, Plaintiff sent Defendant a request for a quote in order to purchase several types of cables based on "precise customer specifications." ECF No. 1-2, PageID.13. Plaintiff provided Defendant a Purchase Order, which in addition to outlining the terms for the purchase of said cables, included the following provision: "For full terms and conditions see www.ventower.com." ECF No. 7-4, PageID.116. The full terms and conditions found therein contain the following forum selection clause:

> <u>GOVERNING LAW; DISPUTES</u>. This agreement shall be construed and interpreted in accordance with the laws of the State of Michigan. All disputes shall be adjudicated exclusively in Michigan state court (Monroe County) or, if subject matter jurisdiction can be established, in the U.S. District Court for the Eastern District of Michigan.

ECF No. 7-5, PageID.126. Shortly thereafter, Defendant, without expressly signing the Purchase Order, sent its own Order Acknowledgement form to Plaintiff. *See* ECF No. 7-6.

A few months later, and in furtherance of their agreement, Defendant shipped the order of cables to Michigan and Plaintiff provided payment. *See* ECF No. 7-7. Upon receiving the cables and pursuant to the Purchase Order conferring a right to inspect the quality of the shipment, Plaintiff alleges that its quality assurance engineers discovered that the cables were non-conforming. ECF No. 7, PageID.92. The parties attempted to work out their differences and reached a Compromised Agreement, where Defendant would compensate for the non-conforming parts and ship the appropriate parts to Plaintiff. In return, Plaintiff would offset fifty percent of the costs incurred by Defendant's breach and prepay for additional cables. ECF No. 7-9, PageID.67. But to date, Plaintiff alleges that Defendant has neither completely satisfied its end of the Compromised Agreement nor the original Purchase Order. ECF No. 7-10, PageID.141-43.

Plaintiff thereafter filed suit in Michigan state court against Defendant for breach of contract. In its state court Complaint, Plaintiff alleges that Defendant breached their agreement by shipping non-conforming goods, inducing Plaintiff to enter into a subsequent Compromised Agreement, and then repudiating the subsequent Compromised Agreement. ECF No. 1-2, PageID.11-12. Specifically, Plaintiff alleges five claims: (1) breach of contract; (2) fraud based on a bad-faith promise; (3) common law conversion; (4) statutory conversion;

3

and (5) fraud in the inducement. *See* ECF No. 1-2. Defendant then removed to federal court in the Eastern District of Michigan. Now Defendant moves to transfer this case to a federal court in the Eastern District of Arkansas. *See* ECF No. 6. But Plaintiff counters that pursuant to the forum selection clause the parties agreed to in the Purchase Order, Defendant must litigate this dispute here. *See* ECF No. 7.

## II.    Discussion

Defendant maintains that a "substantial part of the events or omissions giving rise to the claim" occurred in Arkansas, not Michigan. ECF No. 6, PageID.53. Accordingly, Defendant urges the Court either to dismiss this suit for forum non conveniens or transfer it to the Eastern District of Arkansas. However, dismissing a case pursuant to the doctrine of forum non conveniens is a harsh course that has become a rare and generally inappropriate remedy in the wake of the enactment of 28 U.S.C. § 1404(a). 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *FEDERAL PRACTICE AND PROCEDURE* § 3828 (4th Ed. 2019). Having carefully considered the arguments of the parties and the relevant authorities, the Court declines to dismiss under forum non conveniens or to transfer to a federal district court in the Eastern District of Arkansas.

### A. Forum non conveniens dismissal is disfavored where a federal forum is available.

Forum non conveniens applies where the "superior alternative forum is in a different judicial system—typically, the court of another

4

country" and accordingly, "there is no mechanism by which the case may be transferred." *Id*. Instead, the appropriate remedy where a court does find that a party has established forum non conveniens is to dismiss or stay the case. *Id*. Today, the federal doctrine of forum non conveniens has continuing application only where the alternative forum is abroad or "perhaps in rare circumstances where a state or territorial court serves litigational convenience best." *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2 (1994); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing 8 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3823, pp. 620-23 & nn.9-10). The Sixth Circuit has further clarified this rule by expressly stating that "[f]ollowing enactment of 28 U.S.C. § 1404(a) in 1961, the doctrine of forum non conveniens now only applies in cases in which the alternative forum is in another country." *Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A. de C.V.*, 629 F.3d 520, 523 n.1 (6th Cir. 2010). By contrast, "[i]f another federal district is an alternative forum, dismissal on grounds of forum non conveniens is inapplicable and § 1404(a) applies." *Id*. (citing *Sinochem Int'l Co. Ltd.*, 549 U.S. at 430).

In *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49 (2013), the Supreme Court considered a forum selection clause that permitted suit to be brought either in the Circuit Court for the City of Norfolk Virginia or in the Eastern District of Virginia, Norfolk

Division. *Id.* at 53. In that seminal case, the Court "analyzed the propriety of the transfer exclusively under 28 U.S.C. § 1404(a) rather than the common law doctrine of forum non conveniens." *Pence v. Gee Group, Inc.*, 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017).

In *Pence*, the district court in the Southern District of New York, following *Atlantic Marine*, also concluded that where courts are dealing with a forum selection clause that provides for jurisdiction in either a state or federal court, as the clause at issue in this case does, it is § 1404(a)—and not forum non conveniens—that applies. In a similar case, *Childress Cattle, LLC v. Cain*, the Western District of Kentucky determined that because the defendants were not seeking forum non conveniens dismissal on the basis that the case should be litigated in a foreign venue and in fact agreed that venue was proper in Indiana, including in a federal district court in Indiana, dismissing the action under forum non conveniens "would be an inappropriate application of the doctrine." No. 3:17-cv-003888-JHM, 2017 WL 3446182, *10 (W.D. Ky. Aug. 10, 2017).

This review of recent forum non conveniens jurisprudence suggests that application of the doctrine would be inappropriate in this case, where the forum selection clause states that disputes arising from the Purchase Order must be litigated in Michigan state court or in the

District Court for the Eastern District of Michigan. The Court thus denies Defendant's motion to dismiss under forum non conveniens.

### B. An enforceable forum selection clause alters the analysis for forum non conveniens and § 1404(a).

In contrast, when venue is proper where the plaintiff initially filed the case, but another federal district court would be a more convenient forum, the court may transfer the case to that district court under 28 U.S.C. § 1404(a). Section 1404(a) is essentially a codification of the doctrine of forum non conveniens that applies where the transferee venue would be within the federal court system. *Atlantic Marine*, 571 U.S. at 60. The statute establishes three general requirements for transfer that are almost identical to those for forum non conveniens dismissal: (1) the action could have been filed in the transferee district court; (2) transfer serves the interests of justice; and (3) transfer is convenient for the witnesses and parties. *Applied Energy Techs., Inc. v. Solar Liberty Sys., Inc.*, No. 09-CV-11959-DT, 2009 WL 2777079, at *5 (E.D. Mich. Aug. 27, 2009). Factors district courts typically consider in determining whether § 1404(a) transfer is warranted include: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's

choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Perceptron, Inc. v. Silicon Video, Inc.*, 723 F. Supp. 2d 722, 729 (E.D. Mich. 2006). Because the forum selection clause at issue provides that this litigation could have been brought in either Michigan state court or in the Eastern District of Michigan, the Court will apply § 1404(a) and related jurisprudence to determine whether this matter should be transferred to the Eastern District of Arkansas.

However, if a forum selection clause is enforceable and binding on the parties, it alters the court's traditional § 1404(a) transfer analysis. While the Sixth Circuit has held that the presence of a valid forum selection clause by itself is not dispositive and must be weighed against the other factors enumerated in § 1404(a), in practice a valid and enforceable forum selection clause "will almost always control." *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 370 (6th Cir. 2008); *see also Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019). By contrast, where a forum selection clause does not appear to apply to the matter, or its validity is uncertain or disputed, the clause may be given less weight or ignored altogether. *See Auto-wares, LLC v. Wis. River Co-op Servs.*, No. 1:09-cv-702, 2010 WL 2508356, at *3 (W.D. Mich. June 17, 2010).

Importantly, *Atlantic Marine* requires that courts adapt their usual § 1404(a) transfer (and forum non conveniens dismissal) analysis in three ways when there is a valid forum selection clause. First, because the parties have already agreed to litigate in another district, "the plaintiff's choice of forum merits no weight" and the plaintiff in fact bears the burden of establishing that dismissal or transfer is not appropriate. *Atlantic Marine*, 571 U.S. at 59-60. Second, when the parties are bound by a forum selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. At the time of contracting, it was foreseeable that a forum stipulated to in a forum selection clause would be inconvenient. District courts must honor that agreement. *See id.* Finally, unlike the situation in this case, when a party bound by a forum selection clause files suit in a different forum in violation of the parties' agreement, a § 1404(a) transfer of venue will not carry with it choice-of-law rules applicable in the original venue, as might ordinarily be the case. *Id.* at 64-65. The Court thus considers only the public-interest factors relevant to dismissal or transfer, which will "rarely defeat a transfer [or forum non conveniens] motion" based on a valid forum selection clause. *Id.*

Here, the second point, regarding parties waiving the right to challenge the preselected forum as inconvenient, warrants further

analysis as Defendant makes much out of the inconvenience in having to litigate this suit in Michigan when it conducts its business out of Arkansas. ECF No. 6, PageID.56-57. Defendant is an Arkansas corporation and much of the evidence will come largely from its employees, many if not all of whom are in Arkansas. *Id*. The cables that are the subject of the dispute are in Arkansas. *Id*. Further, Defendant contends that the Eastern District of Arkansas "is where a substantial part of the events which gave rise to this suit occurred." *Id*. All of this may be true, but when the parties are bound by a forum selection clause, "they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine*, at 64. And, as explained in the next section, the parties are indeed bound by a forum selection clause.

But even without a forum selection clause, if a straightforward analysis of § 1404(a) applied, the Court still would not grant Defendant's motion to transfer to Arkansas on the basis that it is the district where "a substantial part of the events or omissions giving rise to the claim occurred." ECF No. 9, PageID.150. Courts have routinely recognized that venue can be proper in more than one district. The Sixth Circuit has defined "substantial part" to mean "any forum with a substantial connection to the plaintiff's claim." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998). "Substantial part" does not mean in

the district "with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003). "The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too." David D. Siegel, COMMENTARY ON THE 1988 AND 1990 REVISIONS OF SECTION 1391, SUBDIVISION (A), CLAUSE (2), 28 U.S.C.A. § 1391 (1993). Here, it is undisputed that this suit involves substantial events that occurred in both Arkansas and Michigan. Therefore, just because a "substantial part" of the transaction took place in Arkansas does not mean it is a more proper forum than Michigan. For that reason, Defendant's argument must fail.

Defendant's contention about the inconvenience of litigating in Michigan rather than Arkansas is similarly unpersuasive. Critically, Defendant waived this argument when it agreed to the forum selection clause. *See Atlantic Marine*, 571 U.S. at 64. But even so, "'[i]nconvenience is more than just being upset or reluctant about having to drive a few hours in a car or travel…by plane." *Silberg v. Zotec Solutions, Inc.*, No. 05-cv-73822, 2006 WL 1007635, at *4 (E.D. Mich. 2006). Both parties aver that several witnesses will have to travel from Michigan to Arkansas, or from Arkansas to Michigan, depending on where the suit is

heard. Some inconvenience to the parties and witnesses on both sides is therefore unavoidable. The Court finds that it is equally inconvenient for Defendant to defend this suit here as it is for Plaintiff to try its suit in Arkansas.

### C. The forum selection clause is enforceable against Defendant.

Before assessing whether the public-interest factors in this case weigh in favor of transfer to the Eastern District of Arkansas, the Court must determine whether Plaintiff may enforce the Purchase Order's forum selection clause against the Defendant.

The enforceability of forum selection clauses is governed by federal law. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). "The Supreme Court has stated that in light of present-day commercial realities, a forum selection clause in a commercial contract should control, absent a strong showing that it should be set aside." *Preferred Cap., Inc. v. Assocs. in Urology*, 453, F.3d 718, 721 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)); *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). "A valid forum selection clause will have 'controlling weight in all but the most exceptional cases.'" *Atlantic Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Furthermore, "federal law governs the inquiry when a federal court, sitting in diversity, evaluates a forum selection clause in the context of a 28 U.S.C. § 1404(a) motion to transfer venue or in the context of any federal statute." *Wong*, 589 F.3d at 828. "Federal common law in turn directs that forum-selection clauses should be interpreted by 'references to ordinary contract principles.'" *Holtzman v. Village Green Management Company LLC*, 19-cv-11150, 2020 WL 264331, at *6 (E.D. Mich. 2020) (citing *679637 Ontario Ltd. v. Alpine Sign & Printer Supply, Inc.*, 218 F. Supp. 3d 572, 576 (E.D. Mich. 2016)).

Defendant advances three arguments to support its position that the forum selection clause is unenforceable. First, Defendant contends it did not agree to the forum selection clause. Second, that Michigan law does not recognize this forum selection clause. Finally, Defendant maintains that the forum selection clause applies to the Purchase Order but not the Compromised Agreement, and the latter forms the basis of Plaintiff's Complaint. The Court disagrees. Each argument is addressed in order.

As a threshold matter, the parties dispute whether the Purchase Order properly incorporated the forum selection clause located on Plaintiff's website in the Purchase Order. Plaintiff argues that its Purchase Order incorporates a forum selection provision by directing the reader to view the "full terms and conditions" at "www.ventower.com."

13

ECF No. 7-4, PageID.116; ECF No. 7, PageID.95. The full terms and conditions found there provide that the purchase agreement "shall be construed and interpreted in accordance with the laws of the State of Michigan. All disputes shall be adjudicated in Michigan state court (Monroe County) or, if subject matter jurisdiction can be established, in the U.S. District Court for the Eastern District of Michigan." ECF No. 7-5, PageID.126. Because Defendant agreed to the terms of the Purchase Order, Plaintiff contends Defendant also agreed to incorporate by reference its full terms and conditions, including the forum selection clause governing the proper venue of all future disputes. ECF No. 7, PageID.94-95.

Defendant makes several arguments holding that it did not expressly agree to the Purchase Order and consequently the referenced full terms and conditions. ECF No. 9, PageID.148. One is that the Purchase Order does not include language expressly requiring Defendant to be bound by the terms and conditions or that the terms were specifically incorporated. *Id*. Another argument is that Defendant did not sign the Purchase Order. *Id*. Instead, Defendant claims that it accepted Plaintiff's order by sending its own Order Acknowledgement Form, which lacked any reference to Plaintiff's Purchase Order, let alone a forum selection clause. Defendant additionally argues that the only evidence showing any reference to forum selection comes from Plaintiff's

modification of its own Purchase Order "Delivery Notes." *Id.* at PageID.148-49; *see also* ECF No. 9-4, PageID.162-64. The Delivery Notes appear to assign liability for risk of loss during the shipment of goods, which in this case stated, "FOB Origin/Collect."[1] ECF No. 9-2, PageID.165. In correspondence between the parties dated September 10, 2018, Defendant negotiated with Plaintiff to change liability for risk of loss from "FOB Destination" to "FOB Origin/Collect." ECF No. 9-4, PageID.164. Plaintiff agreed to this modification. *Id.* at PageID.163. According to Defendant, by agreeing to modify the FOB terms under the Delivery Notes of the Purchase Order, Plaintiff agreed to shift Defendant's liability for risk off loss to Plaintiff once Defendant handed possession of the shipment to a carrier in Arkansas. As the Court best understands this argument, because Defendant was no longer liable for the risk of loss once a carrier took possession of the shipment in Arkansas, this meant that it did not agree to the forum selection clause

---

[1] "FOB" stands for Free On Board. According to Michigan commercial law, by default the seller is responsible for making all arrangements for transportation of the goods to the place for delivery specified in the agreement. When the term "FOB" is the place of shipment, "the seller must at that place ship the goods in the manner provided in this article and bear the expense and risk of putting them into the possession of the carrier." When the term "FOB" is the place of destination, the seller must at his own expense and risk transport the goods to that place and there tender delivery of them in the manner provided in this article." M.C.L. § 440.2319(1)(a)-(c).

requiring that all disputes be litigated in Michigan. ECF No. 9, PageID.148-49. The Court disagrees.

First, Defendant argues that it did not sign the Purchase Order. While it is true that Defendant did not expressly sign Plaintiff's Purchase Order, this fact is not fatal to Plaintiff's position. It is well-established that a party need not expressly sign a contract to be bound by its terms. "An acceptance of an offer to contract may be implied from the acts and circumstances of the parties." *Ludowici-Celadon Co. v. McKinley*, 307 Mich. 149, 153 (1943) (citing the Restatement of the Law of Contracts, § 21). Furthermore, "'Michigan law permits parties to accept offers through conduct." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013); *see also In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990). By negotiating the Purchase Order's terms and subsequently performing, Defendant accepted the terms in Plaintiff's Purchase Order and the incorporated terms and conditions therein. Furthermore, Plaintiff's willingness to modify the Delivery Notes terms in its Purchase Order does not advance Defendant's position. Rather, it demonstrates that Defendant carefully examined the terms of the Purchase Order and sought to modify that portion of it with which it disagreed. Since Defendant renegotiated some of the terms in the Purchase Order—but not others, there is reason to believe that Defendant found the rest of the terms acceptable. The Court finds that the Purchase Order properly

16

incorporated the forum selection clause and that Defendant accepted its terms by performing the contract.

For its second argument, Defendant contends that "Plaintiff cannot rely on its forum-selection clause as a matter of law. Michigan law holds that contractual provisions to establish venue for potential causes of action that may arise after execution are unenforceable." ECF No. 9, PageID.150. The case law on which Defendant seeks to rely is not on all fours with the present case. In *Omne Financial, Inc. v. Shacks, Inc.*, the parties entering into a contract agreed to establish venue in the event of a dispute. 460 Mich. 305, 313 (1999). The issue before the court was determining the "enforceability of contract provisions establishing venue for causes of action that could arise after the contract is executed." *Id*. The court noted that the Michigan legislature had determined the requirements for proper venue by statute under M.C.L. §§ 600.1605 and 600.1621. Therefore, "enforcement of contractual provisions establishing venue for causes of action that may arise after the contract is executed would contradict the manifest intent of the Legislature." *Id*. at 313. In contrast, Michigan law allows for parties to agree to a forum selection clause as an exception to the statutory requirements for determining the proper forum. M.C.L. § 600.745(2). The Michigan Supreme Court refused to read a similar exception in the Michigan statute governing proper venue. *Id*. at 313. In other words, in Michigan parties cannot agree to a

venue selection clause in contravention of statutes that mandated the requirements for proper venue but may do so with regards to forum selection clauses. See *id*. at 312.

*Omne Financial* is inapt here because the contractual provision in dispute in that case involves venue selection clauses, which usually refer to the geographic location *within a forum* where the case will be tried. In contrast, the contractual provision in dispute in this suit is a forum selection clause, which usually refers to the particular judicial system in which disputes must be litigated. This is so because the provision restricts disputes to either Michigan state court, or "if subject matter jurisdiction can be established, in the U.S. District Court for the Eastern District of Michigan." ECF No. 7-5, PageID.126. But more importantly, *Omne Financial* does not control here. Federal—not state—law "governs the inquiry of whether a forum selection clause is generally enforceable." *See Holtzman*, at *6; *see also 679637 Ontario Ltd.*, at 576.

Finally, Defendant claims that the forum selection clause is inapplicable to this suit because the Compromised Agreement, not the Purchase Order, forms the basis for Plaintiff's Complaint. ECF No. 9, PageID.150-51. The Purchase Order incorporates by reference the forum selection clause, but the Compromised Agreement does not. This argument is similarly unavailing for three reasons.

First, the facts and claims set forth in Plaintiff's Complaint necessarily arise from the Purchase Order. ECF No. 6-2, PageID.64. Importantly, Plaintiff's Complaint references the forum selection clause as the basis for determining this suit's proper venue. ECF No. 1-2, PageID.12.  The Compromised Agreement is merely derivative because it is a continuation of the parties' attempt to complete the original contract. The Purchase Order created the right enabling Plaintiff to inspect the shipment for non-conforming goods, which led Plaintiff's engineers to discover the non-conforming goods, resulting in the need for the Compromised Agreement to correct the dispute. *See* ECF No. 6-2. Because Plaintiff's claims stem from the Compromised Agreement, which is derivative of the Purchase Order, this suit falls within the control of the forum selection clause. Second, the Compromised Agreement makes two references to the Purchase Order. ECF No. 7-10, PageID.143. For example, it reads "2. Ventower will purchase '21 sets' of cable remaining on the *PO 4461* [Purchase Order] which were canceled due to non-delivery." *Id.* (emphasis added). And another, "3. Cameron Wire to insure FY 2020 cable shipments are in *full compliance with Ventower requirements*…" (emphasis added). One of Ventower's requirements being that "[a]ll disputes shall be adjudicated exclusively" according to the forum selection clause found in its terms and conditions. It is undisputed that Defendant agreed to the terms in the Compromised Agreement. ECF No. 6, PageID.54. Finally, nothing in the Compromised

19

Agreement suggests that the parties intended to revoke the forum selection clause incorporated by reference in the Purchase Order. As such, the Court finds that the existence of the Compromised Agreement does nothing to alter the parties' obligations under the forum selection clause referenced in the Purchase Order.

Accordingly, the Court finds that Plaintiff may enforce the forum selection clause against Defendant.

### D. The forum selection clause encompasses this suit.

Having established that Plaintiff may enforce the forum selection clause against Defendant, the Court now turns to the question of whether the clause is applicable to the dispute at hand. Determining whether the forum selection clause controls this suit is a matter of contract interpretation. 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 3803.1. "The interpretation of a forum selection clause is an analytically distinct concept from the enforceability of the clause." *Collins ex rel. v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017). As noted earlier, the Sixth Circuit holds that "federal courts construing forum selection clauses apply federal common law, not the law of the state in which the federal court sits." *679637 Ontario Ltd.*, 218 F. Supp. 3d at 576 (citing *Wong*, 589 F.3d at 828). And federal common law directs district courts to interpret forum selection clauses using ordinary contract principles. *In re Delta Am. Re Ins. Co.*, 900 F.2d at 892.

20

Here, the plain language of the Purchase Order's forum selection is broad, stating that "[a]ll disputes shall be adjudicated exclusively in Michigan state court (Monroe County) or, if subject matter jurisdiction can be established, in the U.S. District Court for the Eastern District of Michigan." ECF No. 7-5, PageID.126. This states that the forum selection clause is mandatory, not permissive. A permissive clause allows for jurisdiction in a designated forum but does not prohibit litigation elsewhere. By contrast, a mandatory clause creates an exclusive forum for litigation under the contract. *679637 Ontario Ltd.*, 218 F. Supp. 3d at 576. Further, the Sixth Circuit instructs that the use of the word "shall," as opposed to words like "may" or "should," when used in a forum selection clause makes the clause mandatory, not permissive. *See Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) ("Because the clause states that 'all' disputes 'shall' be at [Defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory"). As such, the forum selection clause here provides that all disputes "shall be adjudicated exclusively" either in Michigan state court or, if subject matter jurisdiction can be established, in the Eastern District of Michigan. *See* ECF No. 7-5, PageID.126.

21

**E. Public-interest factors weigh against § 1404(a) transfer.**

Because the Purchase Order's forum selection clause is enforceable, mandatory, and encompasses Plaintiff's claims in this suit, the Court must now apply *Atlantic Marine*'s modified analysis to determine whether transfer is warranted under § 1404(a). As required by *Atlantic Marine*, the Court considers only the public-interest factors relevant to dismissal or transfer, which will "rarely defeat a transfer [or forum non conveniens] motion" based on a valid forum selection clause. Public-interest factors to consider include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atlantic Marine*, 571 U.S. at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

Applying these considerations to this suit does not sway the Court in favor of transferring this matter to the Eastern District of Arkansas. The relevant public-interest considerations appear to be the "local interest in having localized controversies decided at home" and "the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* Both parties have framed this as a dispute involving their respective home forums. On balance, neither party's preferred forum has a greater interest in litigating this controversy such that it

22

would justify a § 1404(a) transfer. In addition, the forum selection clause, which is enforceable against Defendant here, requires that Michigan law will govern the suit, at least with respect to the breach of contract claim. While an Arkansas federal court is capable of interpreting and applying Michigan law, a federal court in Michigan has more experience doing so. *Fluidtech, Inc. v. Gemu Valves, Inc.*, 457 F. Supp. 762, 768 (E.D. Mich. 2006) (citing *Detroit Coke Corp. v. NKK Chem. USA, Inc.*, 794 F. Supp. 214, 219 (E.D. Mich. 1992)). For these reasons, the Court finds that the public-interest considerations do not weigh in favor of transferring this matter to the Eastern District of Arkansas.

## CONCLUSION

For all of the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to transfer, or in the alternative, to dismiss for forum non conveniens, is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 12, 2020

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

23